REGAN, Judge
(dissenting).
I dissent for the reason that the candidate, Harry T. Lemmon, does not possess the qualifications required of a candidate for the Court of Appeal, Fourth Circuit, as provided in Article 7, Sec. 22 of the Constitution of 1921. The relevant portion of this constitutional mandate requires that the candidate shall be a resident of the Court of Appeal district from which he chooses to run and must have actually resided therein for at least two years immediately preceding his election.
A cursory reading of the record herein discloses absolutely and without equivocation that Mr. Lemmon has not satisfied the aforementioned residence requirements. The facts upon which this inevitable conclusion is based are contained in the testimony of the candidate himself. Mr. Lem-mon testified, and it cannot be gainsaid, that he maintains a residence in Napoleon Avenue in the City of New Orleans. His wife and children reside there, his children attend school in New Orleans and he has filed an application for a homestead exemption for the benefit of the New Orleans residence. It is therefore obvious that the residence maintained by him in New Orleans is his principal residence. It is also clear that Mr. Lemmon has in fact maintained a residence in St. Charles Parish only since April of 1970, a period of approximately five months, in a home rented from Mr. James Vial’s uncle. The whole tenor of the record leads us to the inevitable conclusion that this was done in a futile effort to create the necessary residence requirements which had previously been lacking.
He also insists that for at least two years prior to the election he has maintained a bona fide residence in Hahnville, within the confines of St. Charles Parish, at the home of his father-in-law, James Vial. It is undisputed that this home is owned by Mr. Vial, and that Mr. Lemmon pays no rent, no utilities, and no taxes with respect to this nebulous residence. By his own testimony the candidate conceded that he spent, at most, a total of twenty-five nights per year in his father-in-law’s residence, the remainder of the nights being spent in New Orleans with his wife and children. The only wardrobe maintained in Hahnville by Mr. Lemmon are several items of sport clothes, however, he candidly admitted that his complete wardrobe, including his business attire, is maintained in his New Orleans residence.
The only furniture to which Mr. Lem-mon makes any claim of ownership in Hahnville is the bedroom set which he and his wife use when they spend the aforementioned nights there, together with two baby beds. However, this record points out that the bedroom set belonged to Mrs. Lemmon prior to her marriage.
Contrary to the statements in the majority opinion, Mr. Lemmon did not maintain a “suite of rooms” in the Vial residence. He and his wife used her former bedroom, and the children were accommodated in whatever part of the house was available for their use on any particular visit. Moreover, and again contrary to the majority opinion, he did not engage in social entertaining in his own behalf in the Vial home. The only evidence in the record of entertainment there was political parties held after his decision to run for this office. These facts show, and he admits, that his presence and that of his wife in the Vial residence was in the nature of visits rather than one of residence. A fair interpretation of the facts here simply shows that the James Vials, like most parents, simply provided an excellent environment for their daughter, son-in-law and grandchildren to enjoy their weekend visits to Hahnville.
To reiterate, only for the purpose of emphasis, the facts disclose, beyond any reasonable doubt, and actually leave no room for dispute, or disagreement, that Mr. Lemmon is not a bona fide resident of the *56 Parish of St. Charles and has not been a resident for the two years immediately preceding the forthcoming election. His only connection with the Hahnville property is that of an occasional visitor, since he does not possess the physical contacts and economic responsibilities which our jurisprudence has required as a condition precedent to the creation of a bona fide residence. If a jurisprudential analogy need be cited in light of the facts developed herein the case of Mclntire v. Carpenter [1] serves as an excellent example. In that case the candidate was also an attorney who practiced law in the parish of his claimed residence. He maintained his notarial commission at his claimed residence, provided himself with sleeping and eating accommodations there, and in fact spent two nights a week in these quarters. However, like the present candidate, Mclntire maintains a home in another parish where his family lived and where he lived with them during the vast majority of his non-working hours. Despite the fact that Mclntire maintained far more physical and economic contacts with his claimed political residence, this Court nevertheless reasoned that his contacts with this residence were insufficient to justify the legal conclusion that he resided there.
If the opinion of the majority in this case should stand it would render nugatory and completely obliterate the constitutional requirement that a candidate for this Court be a bona fide resident from the district from where he runs for two years prior to election. If the residence requirement is to be abandoned, this action must be taken by the people by amendment to the constitutional provision referred to hereinabove. It is not the function of this or any other court to reform or amend the basic organic law of the State of Louisiana.
Since this Court is under the statutory duty to decide the issue posed by this appeal within twenty-four hours after its submission, we are unable to engage in a full and scholarly discussion of the jurisprudence relevant thereto.
For the foregoing reasons I am compelled to dissent from the opinion of the majority and conclude without equivocation that Mr. Lemmon should be disqualified as a candidate for Judge of the Court of Appeal, Fourth Circuit, third district.

. 202 So.2d 297